IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SAMMIE GOODWIN, #234046, ) | |
| ) | |
| ) | CIVIL ACTION NO. 3:08-2485-RBH-JRM |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ELAINE ROBINSON, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

     Petitioner, Sammie Goodwin ("Goodwin"), is an inmate with the South Carolina Department of Corrections serving seven (7) year concurrent sentences for assault and battery with intent to kill and assault with intent to kill. Goodwin filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 10, 2008. Respondent filed a return and motion for summary judgment on November 6, 2008. Because Goodwin is *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on November 7, 2008 explaining to him his responsibility to respond to the motion for summary judgment. Goodwin filed his response on January 12 , 2009.

     By order of March 25, 2009, the undersigned directed Respondent to file a supplemental return addressing Goodwin's first claim for relief[1] and allowing Goodwin time to file an additional

---

[1] When the petition was entered into the Court's electronic docket system, several pages were omitted. These pages included Goodwin's first claim for relief which Respondent understandably failed to address.

1

Roseboro response. Respondent filed the supplemental return on April 17, 2009. Goodwin filed his response to the Respondent's supplemental return on May 18, 2009.

**Procedural History**

On June 6, 2004, Goodwin and his sons, Andre Goodwin and Sammie Goodwin, Jr., were enjoying a family outing at the Brick Playground, a Columbia "strip club." (App. 18). A highly intoxicated Goodwin got in an argument with one of the exotic dancers, and the Goodwins were ejected from the club. Goodwin apparently retrieved a firearm from his vehicle and returned to the club. He shot one bouncer in the ankle and fired at another. Goodwin and his sons were arrested. He pled guilty to the charges on August 29, 2005 pursuant to a negotiated plea. He was represented by retained counsel, Jack B. Swerling, Esquire.[2]

On September 12, 2005, Goodwin filed a *pro se* notice of appeal in the South Carolina Court of Appeals. The State filed a motion to dismiss because the notice was untimely. The appeal was dismissed for violation of state procedural rules on November 18, 2005. The Remittitur was returned on December 2, 2005. On December 9, 2005, Goodwin filed a "Motion to Dismiss Sentence" in the Court of General Sessions for Richland County. There is no indication that this motion has ever been addressed by the court.

Goodwin filed an application for post-conviction relief ("PCR") on February 8, 2006. (App. 40). An evidentiary hearing was held on February 28, 2007. (App. 51). Goodwin was represented by Tara D. Shurling, Esquire. Goodwin and Mr. Swerling testified. The PCR court issued an order

---

[2]The sons, represented by separate counsel, pled guilty to lesser charges for their roles in the shootings at the same time as Goodwin.

of dismissal on March 28, 2007. A <u>Johnson</u>[3] petition for writ of certiorari was filed on Goodwin's behalf by the South Carolina Office of Appellate Defense raising the following issue:

> Was the guilty plea rendered involuntarily based on counsel's failure to investigate and prepare for trial?

Pursuant to state procedure, Goodwin filed a *pro se* brief raising the following additional issues:

> **Issue One**: Did the trial court lack subject matter jurisdiction to accept Appellant's guilty plea without presentment of valid indictments or waiver thereof?
>
> **Issue Two**: Guilty plea was not knowingly, voluntarily and intelligently entered based on due process violations.
>
> **Issue Three**: Trial court did not have subject matter jurisdiction to accept guilty plea.

The South Carolina Supreme Court denied the petition for writ of certiorari on June 26, 2008. The Remittitur was returned on July 14, 2008.

## Grounds for Relief

In his present petition Goodwin asserts that he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:**   Ineffective assistance of counsel Denial Sixth and Fourteenth Amendment (a) Supporting Facts: Counsel failure to adequately investigate to prepare for trial, counsel failed to discovery (sic) the substantial amounts of mitigation evidence that would support that the Petition (sic) are innocent of all the charges against him, there is no evidence to support the facts that the

---

[3]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988); <u>see</u> also <u>Anders v. California</u>, 386 U.S. 738 (1967).

|              | Petition committed the charges that he is serving this sentence for. |
|---|---|
| **Ground Two:** | Subject matter jurisdiction. Denial Fifth and Sixth Amendment. |
|              | a. During the guilty plea there wasn't an offense read off the docket nor a presentment of a valid indictment. The plea court did not question the petition (sic) regarding to his right to have a grand jury act on his case. During the guilty plea the petition (sic) didn't no (sic) that he was pleading guilty to an unconstitutional presumption jury charge because there was no presentment of an indictment. |
| **Ground Three:** | Ineffective assistance of counsel. Denial of Sixth and Fourteenth Amendment. |
|              | a. Counsel failed to demand a preliminary hearing to weigh all evidence surrounding this matter. |
| **Ground Four:** | Ineffective assistance of counsel. Denial Fifth and Sixth Amendment. |
|              | a. The guilty plea was not knowingly voluntarily and intelligently entered because the court nor his attorney explain the nature and cause of the accusation against him in open court and the mandatory minimum penalty that I could have received on each charge. |

## Discussion

At the beginning of the PCR hearing, Ms. Shurling advised the court of the nature of Goodwin's claim. She stated:

> The Applicant alleges that his pleas of guilty - - his plea of guilty was not knowingly, voluntarily, and intelligently entered. Specifically, it's his position that had counsel been more prepared to take this case to trial by jury, he would not have felt coerced to accept a plea bargain and enter a plea of guilty in this case.
>
> It's his position that he did want a jury trial, that he always wanted a jury trial, and that his will in that regard was overborne by Mr. Swerling's insistence that he pled guilty....

(App. 53-54).

This issue was the focus of Goodwin's testimony[4] and the questions addressed to Mr. Swerling.

The PCR court summarized the issue in its order of dismissal:

> ...the Applicant proceeded on a general allegation of ineffective assistance of counsel for failing to be more prepared for trial as well as involuntary guilty plea in that Applicant was forced to plead guilty because of counsel's lack of preparation.

(App. 97).

The court analyzed this issue based on the record and concluded that any other issues raised by the application had been "waived" at the hearing. The court found that Mr. Swerling had not been ineffective.

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error.

---

[4] Goodwin did testify, in a rather confusing manner, about other perceived deficiencies in the process.

5

If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of

counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

A criminal defendant must be informed of the direct consequences of his plea. Misinformation as to the direct consequences of a plea renders the plea involuntary. Manley v. U.S., 588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment).

At the PCR hearing, Goodwin, contrary to the record of his guilty plea, denied having a firearm or shooting anyone during the incident. (App. 61-63). He testified that Mr. Swerling should have investigated whether the wound to the bouncer was either self-inflicted or inflicted

by the other bouncer. (App. 69). He further testified that he wanted to go to trial but had to plead guilty because,

> "I didn't have a defense. I didn't stand on a leg to go in front of the jury. There was nothing to investigate it, no hospital reports, no S.L.E.D. reports, no evidence."

(App. 73).

On the other hand Mr. Swerling testified that he had obtained the discovery from the State and given a copy of it to Goodwin. He further testified that he and Goodwin met several times with the attorneys representing his sons to plan a trial strategy. According to Swerling he was prepared to go to trial, but on the day of the plea Goodwin changed his mind and decided to plead guilty based in large part to favorable pleas offered to his sons. (App. 85-94).

The PCR court found that Mr. Swerling's testimony was more credible than that of Goodwin. (App. 97). Goodwin did not introduce any evidence that a specific investigation would have produced evidence to support the version of events.[5] The PCR court applied Strickland and Hill in finding that Mr. Swerling was not ineffective.

Since Goodwin filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody

---

[5]In his Roseboro response, Goodwin discusses the evidence found at the crime scene, and attaches copies of several reports and witness statements. However, none of this information was presented to the PCR court.

> pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521. The undersigned concludes that the state court's analysis of Goodwin's claim was not objectively unreasonable.

9

**B. Procedural Bar**

Respondent asserts that all Goodwin's claims are procedurally barred because they were not addressed in the PCR court's[6] order of dismissal and his attorney did not make a motion pursuant to Rule 59, SCRCiv.P. Generally Ground Two, Three and Four were referred to by Goodwin in his PCR testimony and he attempted to raise them in his *pro se* brief for writ of certiorari.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.     Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or

---

[6]The undersigned concludes that Ground One in the present petition is essentially the same general ground outlined by Ms. Shurling at the PCR hearing, addressed by the PCR court, and raised in the Johnson petition. It is discussed on the merits above. Respondent seems to argue that Ground One is procedurally barred due to the wording used by the *pro se* Petitioner.

        (B)(i)  there is either an absence of available State corrective process; or

        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

  (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

  (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

 (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon,

11

266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[7] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique

---

[7] In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. See Rose v. Lundy, supra.

### 2.     Procedural Bypass[8]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in

---

[8]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

13

the state courts, the federal court honors that bar.  State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim.  Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice,  the federal courts generally decline to hear the claim.  See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice").  In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply.  Matthews v.

Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in

collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocense as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocense. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

Based on this analysis the undersigned concludes that Goodwin's second, third and fourth grounds for relief are procedurally barred because they were not addressed by the PCR court and counsel made no motion to require the court to address them.

### C. Subject Matter Jurisdiction

In Ground Two, Goodwin asserts that the trial court did not have subject matter jurisdiction because "there wasn't an offense read off the docket nor a presentment of a valid

16

indictment." Goodwin's indictments (showing a "True Bill" by the Grand Jury) are a part of the record. (App. 36-39). In his PCR hearing testimony, Goodwin seemed to argue that his plea was invalid because he had not seen the indictments propr to his plea. (App. 74). However, the record clearly shows that the trial judge stated the charges on the record, Mr. Swerling stated he had gone over the charges with Goodwin, and Goodwin stated that he understood the charges. (App. 8-9).

The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article V, § 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with original jurisdiction in ...criminal cases"). Subject matter jurisdiction is the authority of a court to hear and determine cases of the general class to which the proceedings in question belong. Dove v. Gold Kist, Inc., 442 S.E.2d 598 (S.C. 1994) and State v. Gentry, 610 S.E.2d 494, 498 (S.C. 2005). The Circuit Court gains subject matter jurisdiction in a criminal case in one of three ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true bill of indictment." State v. Gonzales, 600 S.E.2d 122, 124 (Ct. App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental. A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time. Further, the court may raise the issue *sua sponte*. Lack of subject matter jurisdiction may not be waived by the parties. Brown v. State, 540 S.E.2d 846 (S.C. 2001). The acts of a court which lacks subject matter jurisdiction are void. State v. Funderburk, 191 S.E.2d 250 (S.C. 1972).

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law. Thus, the frequently quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court." In other words, it is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists. This court does not review determinations of state law made by South Carolina courts. See Pulley v. Harris, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

Even if this claim were not procedurally barred, Goodwin would not be entitled to relief. The record shows that Goodwin had adequate notice of the charges against him.

### D. Preliminary Hearing

In his Ground Three, Goodwin asserts that Mr. Swerling was ineffective because he failed to request a preliminary hearing. This claim seems to relate to Goodwin's claim that Mr. Swerling failed to investigate the case. Even if this claim were not procedurally barred, Goodwin would not be entitled to relief. He has not shown that a preliminary hearing would have resulted in the discovery of additional evidence. Further, there is no constitutional right to a preliminary hearing. Gerstein v. Pugh, 420 U.S. 103 (1975).

### E. Involuntary Guilty Plea

In Ground Four of his petition, Goodwin argues that his guilty plea was involuntary because "the court nor his attorney explain[ed] the nature and cause of the accusation against him in open court and the mandatory minimum pentalty...on each charge."

A guilty plea to be valid must be the informed, voluntary decision of a competent

defendant who has the opportunity to receive the advice of a reasonably competent attorney. A defendant must be informed of the charges against him and the protections afforded by the United States Constitution. Boykin v. Alabama, 395 U.S. 238 (1969) and Henderson v. Morgan, 426 U.S. 637 (1976). The defendant must be informed of the direct consequences of his plea such as the maximum sentence and any applicable mandatory minimum sentence. A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).

Even if this claim were not procedurally barred, Goodwin would not be entitled to relief. As discussed above the court advised Goodwin of the charges against him. The Solicitor gave a factual presentation of the events which Goodwin did not challenge. Last, there is no statutory mandatory minimum sentence for charges to which Goodwin entered his pleas. The court specifically advised Goodwin of the maximum sentence for each charge and that he would be required to serve 85% of the sentence imposed.

## Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted** and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

May 21, 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).